# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Jewell Bates Brown,<br><br>  Plaintiff<br><br>v.<br><br>Credit One Bank, N.A.,<br><br>  Defendant | Case No.: 2:17-cv-00786-JAD-VCF<br><br>**Order Denying Motions to Compel Arbitration and Dismiss Claims or Stay Case Pending Arbitration; Granting Motion to Stay Case Pending Resolution of Other Litigation**<br><br>[ECF Nos. 23–25] |

Plaintiff Jewell Bates Brown alleges that Credit One Bank, N.A. called her cell phone using an automatic telephone-dialing system and a prerecorded or artificial voice hundreds of times in a two-year span to collect on a debt that is not hers.[1] Brown alleges that she did not give Credit One express consent to contact her at all, let alone in that manner. Brown contends that Credit One violated the Telephone Consumer Protection Act of 1991 (TCPA) and the Nevada Deceptive Trade Practices Act (NDTPA), was negligent, and invaded her privacy.[2]

Credit One now moves to compel Brown to arbitrate her claims, to dismiss or stay this case pending arbitration, or to stay the entire case pending a ruling from the U.S. Court of Appeals for the District of Columbia in *ACA International v. Federal Communications Commission*.[3] I find that Credit One's evidence is not sufficient to raise a genuine dispute about whether the arbitration agreement can be enforced against Brown under any theory, so I deny its motions to compel arbitration and to dismiss Brown's claims or stay this case pending

---

[1] *See generally* ECF No. 1.

[2] *Id.*

[3] *ACA Int'l v. FCC*, Case No. 15-1211 (D.C. Cir. 2015).

arbitration. To save the parties from the need or inclination to invest resources further briefing the TCPA issues before the circuit court has issued the mandate on its decision in *ACA International*, I grant the motion to stay and stay all proceedings in this case.

**Discussion**

**I.     Motions to compel arbitration and dismiss claims or stay case pending arbitration [ECF Nos. 23, 24]**

The Federal Arbitration Act (FAA) requires federal district courts to stay judicial proceedings and compel the arbitration of claims that are covered by a written and enforceable arbitration agreement.[4] The district court's role in this context is limited to determining "whether a valid arbitration agreement exists" and, if so, "whether the agreement encompasses the disputes at issue."[5] The party seeking to compel arbitration has the burden under the FAA to show that both are true.[6] "In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'"[7]

Brown's husband applied for and obtained a credit account and corresponding credit card from Credit One. Credit One contends that the "VISA/MASTERCARD Cardholder Agreement, Disclosure Statement and Arbitration Agreement" it sent to Brown's husband along with his credit card contains a valid agreement to arbitrate. It is undisputed that Brown is not a signatory to that agreement. "General contract and agency principles apply in determining the

---

[4] 9 U.S.C. § 3.

[5] *Nguyen v. Barnes and Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

[6] *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

[7] *Nguyen*, 763 F.3d at 1175 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

2

enforcement of an arbitration agreement by or against nonsignatories."[8] These principles include incorporation by reference, assumption, agency, veil piercing/alter ego, and estoppel.[9]

Credit One urges me to apply estoppel here. Under this theory, "a nonsignatory is estopped from refusing to comply with an arbitration clause when [she] receives a direct benefit from a contract containing an arbitration clause."[10] Credit One contends that Brown received a direct benefit from the credit agreement because her claims against it arise out of that agreement, she benefitted from the agreement when she called Credit One about her husband's account, and she is an "Authorized User" under the agreement's terms.

### A. *Brown's claims do not arise from the credit agreement*

Brown's claims do not arise from the credit agreement between her husband and Credit One. Brown does not mention the agreement once in her complaint, nor is it lurking, undiscussed, in the background of her claims.[11] Brown's claims arise from her allegations that Credit One called her hundreds of times in a two-year span using an automatic telephone-dialing system and an artificial or prerecorded voice; she did not give express consent for Credit One to contact her at all, let alone in this manner; and this combination violates the TCPA. What does arise from the credit agreement is Credit One's defense: that Brown's husband gave her cell number to Credit One when he applied for an account as an alternative method to contact him, and the credit agreement authorizes Credit One to contact account holders by any means that the

---

[8] *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009).

[9] *Id.*; *accord Truck Ins. Exchg. v. Palmer J. Swanson, Inc.*, 189 P.3d 656, 660 (Nev. 2008).

[10] *Truck Ins. Exchg.*, 189 P.3d at 661 (internal quotation marks and quoted references omitted).

[11] Credit One points out that Brown states in the third paragraph of her complaint that this action arises out of, among other things, Credit One's "breach of contract," ECF No. 1 at ¶ 3, but Brown does not allege the existence of a contract, let alone any acts of breach by Credit One. *See generally id.* Brown does not otherwise allege a breach-of-contract claim in this case.

account holder provides. But whether a defense of the party seeking to compel arbitration arises under the agreement isn't the test for estopping a nonsignatory from refusing to comply with an agreement to arbitrate.

### B. Credit One has not shown that Brown knowingly benefitted from the credit agreement.

Credit One argues that Brown knew about the credit agreement because it was mailed to her husband along with his credit card.[12] It says that Brown benefitted from that agreement because, "on at least one occasion[,]" Credit One's employees spoke with Brown about her husband's account.[13] Credit One also "received at least one call" from Brown's cell phone about her husband's account.[14] Finally, Brown's husband "indicated" in a call to Credit One that Brown "had possession of" her husband's Credit One credit card.[15] I do not find that these alleged facts are sufficient to show that Brown knew about the credit agreement or took advantage of it in some way.

Credit One does not explain what direct benefits Brown received from the credit agreement. There is no evidence that she obtained any information from Credit One about her husband's account, nor is there any evidence that she actually used his account or card. To find on these facts that Brown took advantage of the credit agreement, I would have to infer that merely calling from a number that Credit One has associated with a cardmember's account allows the caller unfettered access to that account; that Credit One presumes such a caller is an

---

[12] *See* ECF No. 23-1 at 3–4, ¶ 4. Credit One's attorneys infer that Brown and her husband live together and that Brown must, therefore, have seen the agreement. I am not willing to take this leap with Credit One's attorneys on this record.

[13] *Id.* at 4, ¶ 7.

[14] *Id.* at ¶ 8.

[15] *Id.* at ¶ 6.

"Authorized User," as that term is defined under the agreement, or has no other safeguards to protect its cardmembers' personal and private-financial information. Or I would have to infer that Brown's husband allowed her to use his account. Neither of these inferences is reasonable on the slim facts that Credit One provides.

Credit One argues that these facts are just like the ones in *Bridge v. Credit One Financial*[16] and, like the *Bridge* court did, I should compel this nonsignatory to arbitrate her claims against Credit One. Credit One's reliance on *Bridge* is misplaced. After Bridge petitioned the Ninth Circuit for a writ of mandamus from the district court's order compelling him to arbitrate, the district court sua sponte ordered that it was going to reconsider its order compelling Bridge to arbitrate, and the court later denied the motion to compel arbitration on reconsideration.[17] I find that Credit One has not shown that Brown knew about the credit agreement or received a direct benefit from it.

### C. Credit One has not shown that Brown is an "Authorized User."

Credit One also argues that I should compel Brown to arbitrate because she is an "Authorized User" of her husband's account and, thus, is bound by the agreement's arbitration clause or is an intended third-party beneficiary of that agreement. The credit agreement states that there are two ways to become an authorized user: (1) Credit One issues an additional card in the name of the authorized user with the cardmember's credit card account number; or (2) the cardmember "allow[s] someone to use" his account.[18] There is no dispute that Credit One did not issue an additional card in Brown's name with her husband's credit card account number, so

---

[16] *Bridge v. Credit One Financial*, 2016 WL 1298712 (D. Nev. Mar. 31, 2016).

[17] *Bridge v. Credit One Fin.*, Case No. 14-cv-01512, at ECF Nos. 195 (sua sponte order), 219 (order on reconsideration denying motion to compel) (D. Nev. Aug. 1, 2016 and Feb. 26, 2018).

[18] ECF No. 23-1 at 9, ¶ 3.

5

the question is whether Brown's husband allowed her to use his account. The evidence that Credit One provides does not tend to show that he did. This is fatal to Credit One's argument that Brown should be compelled to arbitrate because she is an "Authorized User" of her husband's account or card. Credit One's evidence fails to raise a genuine dispute that the arbitration agreement can be enforced against Brown under any theory, so I deny Credit One's motion to compel arbitration, and I deny its motion to dismiss Brown's claims or stay this case pending arbitration as moot.

**II.    Motion to stay litigation pending appeal in another case [ECF No. 25]**

Credit One also moves to stay this case pending a decision of the D.C. Circuit Court of Appeals in *ACA International v. Federal Communications Commission*,[19] arguing that a ruling in that case will impact Brown's claims in this case.[20] The issue, says Credit One, is that the TCPA defines the type of technology at issue in this case "as 'equipment [that] has the *capacity*—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.'"[21] Credit One contends that most modern dialers—including the ones that it uses—are not designed to generate and dial numbers using "a 'random or sequential number generator.'"[22] It explains that the Federal Communications Commission (FCC) issued a ruling on July 10, 2015, that "capacity" in the Act means the "current configuration" of the equipment and its "potential functionalities."[23] ACA International challenges this ruling and has

---

[19] *ADA Int'l v. FCC*, Case No. 15-1211 (D.C. Cir. 2015).
[20] ECF No. 25.
[21] *Id.* at 17 (quoting 47 U.S.C. § 227(a)(1) (emphasis added)).
[22] *Id.*
[23] *Id.* (quoting *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7974 (2015)).

6

asked the D.C. Circuit to decide if "'capacity' means the 'present capacity' of the equipment at the time the calls were made—which[, Credit One contends,] would absolve [it] from TCPA liability—or whether it meant 'future capacity' to generate and dial random or sequential numbers through changes in hardware or software."[24]

On March 16, 2018, the D.C. Circuit issued its ruling in *ACA International* and set aside the part of the FCC's ruling that attempted to clarify what types of calling equipment fall within the TCPA's restrictions.[25] The court also simultaneously and sua sponte ordered the Clerk of Court to "withhold issuance of the mandate . . . until seven days after disposition of any timely petition for rehearing or petition for rehearing en banc."[26] It does not appear that time for the *ACA International* parties to petition for panel rehearing or rehearing en banc has expired.[27]

A district court has the inherent power to stay cases to control its docket and promote the efficient use of judicial resources.[28] When determining whether a stay is appropriate pending the resolution of another case—often called a "*Landis* stay"—the district court must weigh: (1) the possible damage that may result from a stay; (2) any "hardship or inequity" that a party may suffer if required to go forward; and (3) "the orderly course of justice measured in terms of

---

[24] *Id.*

[25] *ACA Int'l*, Case No. 15-1211, at Document # 1722606 (D.C. Cir. Mar. 16, 2018) (per curiam).

[26] *Id.* at Document # 1722608 (D.C. Cir. Mar. 16, 2018).

[27] *See* Circuit Rule 35 for the U.S. Court of Appeals for the District of Columbia Circuit (providing that in all cases where a United States agency is a party, "the time within which any party may seek panel rehearing or rehearing en banc is 45 days after entry of judgment or other form of decision").

[28] *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936); *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

simplifying or complicating of issues, proof, and questions of law" that a stay will engender.[29] I find that a *Landis* stay is appropriate here, and I address these considerations in reverse order.

### A. A stay will promote the orderly course of justice.

At the center of this case are Credit One's auto-dialing practices and their legality based on, among other things, FCC Order 15-72's expansion of the TCPA's reach. The continued viability of that FCC order is the subject of *ACA International*. A decision has already been issued in that case, and the time for the parties to timely file for panel rehearing or rehearing en banc is imminent. Staying this case pending the D.C. Circuit's disposition of *ACA International* will permit the parties to evaluate—and me to consider—the viability of the plaintiff's TCPA claim under the most complete precedent. This will simplify and streamline the proceedings and promote the efficient use of the parties' and the court's resources.

### B. Hardship and equity

Both parties face the prospect of hardship if I resolve the claims or issues in this case before the D.C. Circuit issues the mandate on its decision. A stay will prevent unnecessary briefing and the expenditures of time, attorney's fees, and resources that could be wasted—or at least prematurely spent—guessing the impact of the D.C. Circuit's ultimate ruling. And although there are other claims in this case, the one under the TCPA appears to be the centerpiece of this litigation.

### C. Damage from a stay

Brown argues that she will be damaged by a stay because evidence might get lost or Credit One might be bankrupted by other plaintiffs with claims like hers. I am not persuaded that either point has merit. Credit One responds that Brown's jab at its solvency is absurd, and

---

[29] *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

8

that it has properly placed a litigation hold on all evidence that could be related to this case. The only potential damage that may result from a stay is that the parties will have to wait longer for resolution of this case and any motions that they intend to file in the future. But a delay would also result from any rebriefing or supplemental briefing that will necessarily happen once the decision is issued. So, it is not clear to me that a stay pending the D.C. Circuit's resolution of *ACA International* will ultimately lengthen the time of this case. I thus find that any possible damage that the extension of this stay may cause the parties is minimal.

### D. *The length of the stay is reasonable.*

Finally, I note that a stay of this case pending the disposition of *ACA International* is expected to be reasonably short: a decision was issued on March 16, 2018, and the time for the parties in that case to move for panel rehearing or rehearing en banc expires at the end of this month. The stay should thus be reasonably brief, and it is certainly not indefinite.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Credit One's motion to compel arbitration **[ECF No. 23] is DENIED** and Credit One's motion to dismiss Brown's claims or stay this case pending arbitration **[ECF No. 24] is DENIED as moot**.

IT IS FURTHER ORDERED that Credit One's motion to stay this case pending the D.C. Circuit's resolution of *ACA International* **[ECF No. 25] is GRANTED**. **This case is STAYED pending the D.C. Circuit's issuance of a mandate in *ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir. 2015).** Once the mandate issues, any party may move to lift this stay.

Dated: April 6, 2018

_____
U.S. District Judge Jennifer A. Dorsey